[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15144

_____

Agency No. A201-604-811

DENIS ADRIAN AGUILERA FERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 23, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and ED CARNES, Circuit
Judges.

PER CURIAM:

Denis Adrian Aguilera Fernandez, a citizen of Cuba, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming an Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal. Aguilera Fernandez argues the agency erred when it determined that his past mistreatment in Cuba did not rise to the level of persecution and that he did not establish a well-founded fear of future persecution. After careful consideration and with the benefit of oral argument, we deny Aguilera Fernandez's petition.

## I.    BACKGROUND

Aguilera Fernandez is a Cuban citizen. On the night the Cuban government announced Fidel Castro's death, he tried to buy alcohol for his friend as a birthday present. The problem was that the Cuban government had prohibited the purchase of alcohol in observance of Castro's death. When Aguilera Fernandez attempted to buy the alcohol, police officers stopped him and said he was disrespecting Castro's memory by "celebrating his death." AR 219.[1] An argument between the officers and Aguilera Fernandez ensued, during which Aguilera Fernandez said, "this [is] what the tyranny would do" and "there [is] no democracy in [Cuba]." *Id.* The police officers then hit Aguilera Fernandez and detained him for 24 hours.

In the months following his detention, the Cuban police began surveilling Aguilera Fernandez's house and interviewing his neighbors. Police officers also

---

[1] "AR" refers to the administrative record.

2

periodically went to his house unannounced, asked him questions, and detained him. From the time Aguilera Fernandez was first detained in November 2016 until he left Cuba in December 2018, officers arrested and detained him between seven and ten times. Each detention lasted between eight and 24 hours, and they all took place around national holidays when police assumed Aguilera Fernandez would be "on the streets protesting . . . against the government." AR 223.

While he was detained, Aguilera Fernandez expressed his frustration with the dictatorship in Cuba, the lack of freedom of speech and expression, and the Cuban people's inability to select their own leaders. During the detentions, police officers "physically attacked" Aguilera Fernandez—they handcuffed him and hit him in the back and shoulders with their fists, the palms of their hands, and their knees. AR 225. The officers were "careful[] not to leave any signs or bruises . . . [as] evidence of what they had done," however. *Id.* Aguilera Fernandez said he never went to a doctor because he was afraid of attracting police attention, but he also testified that he did not suffer any injuries. He testified that he did not go out to protest "because [he] was afraid" he would be detained and abused. AR 223.

Sometime in December 2018, Aguilera Fernandez obtained a tourist visa to Panama and took a flight there. From Panama, he traveled through Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico before entering the United States.

After he fled Cuba, police officers visited his house and asked his neighbor and family about his whereabouts.

Aguilera Fernandez entered the United States at a port of entry in El Paso, Texas, seeking asylum. The Department of Homeland Security issued him a notice to appear ("NTA"), charging him as removable as a noncitizen without a valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). He admitted the allegations in the NTA and conceded removability.

Aguilera Fernandez applied for asylum and withholding of removal.[2] At his merits hearing, Aguilera Fernandez testified that he fled Cuba because he was detained and beaten by police officers on account of his political opinion. The IJ found him credible but denied his applications for relief. The IJ determined that he was ineligible for asylum because he had not met his burden of proving past persecution or a well-founded fear of future persecution. Specifically, the IJ concluded that the harm Aguilera Fernandez experienced did not rise to the level of "severe mistreatment" under *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008), which lists kidnapping, attempted murder, and assault with a firearm resulting in a broken nose as examples of persecution. AR 117. As to his well-founded fear of future persecution, the IJ ruled that Aguilera Fernandez had

---

[2] Aguilera Fernandez also sought protection under the Convention Against Torture ("CAT"), which the IJ and BIA denied. Aguilera Fernandez does not challenge on appeal the BIA's denial of his CAT claim.

not established that the Cuban government would target or single him out for persecution upon return to Cuba. The IJ acknowledged the Cuba Country Conditions Report's indication that individuals who are returned to Cuba may be prosecuted for past criminal behavior but found no evidence in the report to suggest those individuals would be tortured. Because the IJ found Aguilera Fernandez ineligible for asylum, the IJ also found him ineligible for withholding of removal because withholding of removal carries a "higher burden [of proof]." AR 119.

The BIA affirmed the IJ's decision, agreeing that Aguilera Fernandez's detentions and assaults did "not cumulatively rise in severity to the level of persecution as a matter of law" and that he had not established a well-founded fear of future persecution in Cuba. AR 4. The BIA further agreed with the IJ's conclusion that Aguilera Fernandez's failure to meet the "well-founded fear" standard for asylum foreclosed his meeting the more stringent standard for withholding of removal. *Id.*

Aguilera Fernandez timely petitioned this Court for review.

## II.    STANDARD OF REVIEW

We review the BIA's decision and the IJ's decision to the extent that the BIA expressly adopts the IJ's opinion or reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). Here, the BIA issued its own opinion but

5

affirmed and agreed with the IJ's decision and reasoning.  We therefore "review the IJ's opinion, to the extent that the BIA found that the IJ's reasons were supported by the record."  *Id.* (internal quotation marks omitted).

We review the agency's legal conclusions *de novo* and its factual findings under the substantial-evidence test.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  The agency's determination that a petitioner failed to establish past persecution is a factual finding we review under the substantial-evidence test.[3]  Under the substantial-evidence test, we must affirm the agency's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (internal quotation marks omitted).  We view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in its favor.  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027

---

[3] Aguilera Fernandez argues that because the IJ determined his testimony was credible, the facts are undisputed and therefore we must review his past persecution claim *de novo*.  We disagree.  We have consistently held that our review of the agency's determination that a noncitizen has not established persecution is limited to whether the decision was supported by substantial evidence.  *See Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).  Thus, to reverse the agency's "fact findings" that a noncitizen has not suffered past persecution or a well-founded fear of persecution, we must conclude that the record compels reversal.  *Id.* (internal quotation marks omitted); *see, e.g.*, *Kazemzadeh*, 577 F.3d at 1352–53 (reviewing adverse past-persecution finding under the substantial-evidence test); *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290 (11th Cir. 2006) (same); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (same); *see also Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235–36 (11th Cir. 2013) ("determining what constitutes persecution is a highly fact-intensive inquiry").

(11th Cir. 2004) (en banc).  Thus, we reverse only if the record "compels" reversal of the agency's findings of fact.  *Id.*

## III.    DISCUSSION

The Attorney General has discretion to grant asylum to any noncitizen who meets the Immigration and Nationality Act's definition of a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is a person who is unable or unwilling to return to his home country because of past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  *Id*. § 1101(a)(42)(A); *see Kazemzadeh*, 577 F.3d at 1351.  To establish asylum eligibility, an applicant must demonstrate that he faced past persecution or has a well-founded fear of future persecution on account of a protected ground.  8 C.F.R. § 1208.13(a), (b).

An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution, a presumption that may be rebutted if the government shows either "a fundamental change in circumstances" in the applicant's home country or that the applicant "could avoid future persecution by relocating" to another the part of the country.  *Id.* § 1208.13(b)(1)(i)(A), (B).  Even where an applicant has not suffered past persecution, he may establish a well-founded fear of persecution by "showing a good reason to fear that he will be singled out for persecution" on account of a protected ground if returned to his

7

home country, *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (internal quotation marks omitted), or proving that he is a member of, or is identified with, a group that is subjected to a "pattern or practice" of persecution in his home country, 8 C.F.R. § 1208.13(b)(2)(iii). The applicant's fear of persecution must be "subjectively genuine and objectively reasonable." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks omitted).

Where an applicant is unable to meet the well-founded fear standard for asylum, he generally fails to establish the "more stringent standard" for withholding of removal. *Id.* at 1232–33.

Aguilera Fernandez challenges the agency's denial of his applications for asylum and withholding of removal, asserting that the agency erred in determining that his mistreatment at the hands of Cuban police officers did not rise to the level of persecution and he did not have a reasonable fear of future persecution if returned to Cuba. We address his arguments in turn.

### a. The Record Does Not Compel the Conclusion that Aguilera Fernandez Suffered Past Persecution.

Aguilera Fernandez argues that the IJ and BIA erred in concluding that his repeated detentions and beatings by the Cuban police did not constitute persecution. We must set aside whether the evidence would support a conclusion that the Cuban police persecuted Aguilera Fernandez because "[o]ur review is

8

more limited." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006). Under the "highly deferential substantial evidence test," *id.*, we do not ask whether the record might support a claim for relief; instead, we ask whether it compels us to reverse the agency's contrary determination, *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1175 (11th Cir. 2008). Here, the record does not compel reversal of the agency's finding that Aguilera Fernandez's past mistreatment did not constitute persecution.

Persecution is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235 (11th Cir. 2013) (internal quotation marks omitted). Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.* (internal quotation marks omitted). In determining whether a petitioner suffered past persecution, we must "evaluate the harms [he] suffered *cumulatively*—that is, even if each fact considered alone would not compel a finding of persecution, the facts taken as a whole may do so." *Id.* Such a determination is "a highly fact-intensive inquiry" that requires considering "the totality of the circumstances on a case-by-case basis." *Id.* at 1235–36.

We have held that brief detentions and minimal physical violence do not compel a finding of persecution. *See Kazemzadeh*, 577 F.3d at 1353. In

9

*Kazemzadeh*, for example, we concluded that evidence that the petitioner was arrested, interrogated and beaten for five hours, and detained for four days did not compel a finding of persecution. *Id.* at 1352–53. In *Djonda*, we held that evidence that the petitioner was imprisoned for 36 hours and beaten with a belt and kicked by police officers, but suffered only minor scratches and bruises, did not compel a finding that the petitioner had been persecuted. 514 F.3d at 1171, 1174. And in *Zheng v. U.S. Att'y Gen.*, we held that the record did not compel a finding of persecution where the petitioner was detained for five days and forced to sign a pledge to stop practicing Falun Gong, a movement banned by the Chinese government in 1999; to watch anti-Falun Gong videos; and to stand in the sun for two hours. 451 F.3d 1287, 1289, 1291 (11th Cir. 2006).

By contrast, "severe" and "extreme" mistreatment do compel a finding of persecution. *De Santamaria*, 525 F.3d at 1009. For instance, in *De Santamaria*, we concluded that the petitioner suffered persecution when members of the Revolutionary Armed Forces of Colombia ("FARC") threatened her with death; assaulted and dragged her out of her vehicle by her hair; tortured and murdered her family groundskeeper; and then kidnapped, beat, and warned her of her imminent murder. *Id.* at 1008–09. Similarly, we determined there had been past persecution in *Mejia v. U.S. Att'y Gen.*, where the petitioner endured "threats and attempted attacks over an 18-month period, which culminated when [the petitioner was]

10

stopped on a roadway by three armed members of the FARC, who threatened [him] at gunpoint, threw him to the ground, and smashed him in the face with the butt of a rifle, breaking his nose." 498 F.3d 1253, 1257–58 (11th Cir. 2007). And in *Delgado v. U.S. Att'y Gen.*, we ruled that a father and son met their burden of demonstrating persecution where unknown masked men had pointed unloaded guns at them, pulled the triggers, and threatened them with death if they continued to speak out against an organization supporting Hugo Chavez; they received threatening phone calls; and the son was attacked and beaten until he was almost unconscious. 487 F.3d 855, 859, 861–62 (11th Cir. 2007).

After reviewing the record, we cannot say it compels a finding that Aguilera Fernandez was persecuted. He testified that over the course of two years he was detained between seven and ten times, for eight to 24 hours at a time, around national holidays and events. Although police hit him during these detentions, he said he never suffered any injuries. To be sure, "we have not required [a showing of] serious physical injury where the petitioner demonstrates repeated threats combined with other forms of severe mistreatment." *De Santamaria*, 525 F.3d at 1009 (collecting cases). Nevertheless, even when viewed cumulatively, Aguilera Fernandez has not shown that the Cuban police subjected him to the kind of

11

"severe mistreatment" akin to that in *De Santamaria*, *Mejia*, and *Delgado*.[4]  We

acknowledge that the Cuban police's treatment was harmful, but the record does

not compel the finding that the harm amounted to persecution.

Aguilera Fernandez also contends that the agency erred by failing to address

the reason why Cuban police detained and beat him (that is, to prevent him from

protesting the government).  He argues, based on language in *Shi*, that he suffered

persecution because he was prevented from voicing his political beliefs and that

the agency failed to give his case reasoned consideration because it ignored this

motivation behind his detentions and beatings.  *See Shi*, 707 F.3d at 1236

(observing that evidence showing Chinese authorities suppressed petitioner's

religious practice "strongly cut[] in favor of finding persecution").  We reject his

arguments for two reasons.

First, *Shi* did not decide that evidence a petitioner was prevented from

exercising a fundamental right—there, the petitioner's religious practice—is

sufficient to compel a finding of past persecution.  Instead, as we do here, we

_____

[4] Aguilera Fernandez notes that the United States Citizenship and Immigration Services ("USCIS") training manual provides that "multiple brief detentions" may amount to persecution. *See* USCIS Refugee, Asylum, & Int'l Operations Directorate, *Definition of Persecution and Eligibility Based on Past Persecution* 20 (Dec. 20, 2019).  In that regard, the manual is generally consistent with our case law that, depending on the circumstances, multiple brief detentions *may*, but do not always, amount to persecution.  But the training manual's guidance does not bind us. *See Bradley v. Sebelius*, 621 F.3d 1330, 1338 (11th Cir. 2010) ("[A]gency interpretations contained in policy statements, manuals, and enforcement guidelines are not entitled to the force of law." (internal quotation marks omitted)).

12

evaluated the "totality of the circumstances presented in [the] case," only one of which was that the petitioner was prevented from practicing his religion. *Id.* at 1236. The petitioner in *Shi* was also detained for seven consecutive days; interrogated twice, during which police slapped him in the face, kicked his chair out from underneath him, and threatened to beat him with a baton; and handcuffed to an iron bar and left overnight outside in the rain, after which he became so sick that police released him for fear that he would die in their custody. *Id.* at 1232–33. We concluded that the cumulative effect of all these harms compelled a finding of persecution. *Id.* at 1239. Here, we accept Aguilera Fernandez's contention that Cuban police targeted him on account of his political opinion and sought to prevent him from voicing his political beliefs. Even so, when we consider the totality of the circumstances, the record does not compel the conclusion that Aguilera Fernandez was persecuted.

Second, the agency afforded reasoned consideration to Aguilera Fernandez's arguments. We have sustained reasoned-consideration claims in circumstances where the agency "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1334 (11th Cir. 2019) (internal quotation marks omitted). None of these circumstances applies here. In fact, the IJ explicitly

13

addressed Aguilera Fernandez's testimony that Cuban police detained and beat him to prevent him from speaking out against the government, explaining that the detentions and beatings "coincided with national events that prevented [him] from protesting or otherwise agitating, or, in the police's opinion, drawing attention to counter government positions during times of national importance . . . . [Police would] place him into custody, and there would be a beating either right after or right before [he] remonstrated and spoke up for his political beliefs." AR 116. Thus, we are left "with the conviction that the [agency] has heard and thought [about Aguilera Fernandez's case] and not merely reacted." *Ali*, 931 F.3d at 1333 (internal quotation marks omitted).

Aguilera Fernandez cites *Ali* for support here, but his reliance is misplaced. In *Ali*, we concluded the agency did not give reasoned consideration where it "fail[ed] to mention . . . five pieces of highly relevant evidence" and "wholly ignored [the petitioner's] own [credible] testimony." *Id.* at 1336 (internal quotation marks omitted). Here, by contrast, the IJ recounted Aguilera Fernandez's testimony, acknowledging that the detentions prevented him from protesting and the beatings occurred right after or right before he spoke out against the government. That the agency "reached a conclusion different from that of [Aguilera Fernandez] regarding the import of [this evidence] does not mean that

14

the [agency's] decision was not supported by reasoned consideration." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 804 (11th Cir. 2016).

### b. The Record Does Not Compel the Conclusion that Aguilera Fernandez Has a Well-Founded Fear of Future Persecution.

Aguilera Fernandez next contends that the IJ and BIA erred in determining that he does not have a well-founded fear of persecution in Cuba. We disagree.

If an applicant fails to demonstrate past persecution, he may still establish asylum eligibility based upon a well-founded fear of future persecution. *De Santamaria*, 525 F.3d at 1007. "To be well-founded, a fear of persecution must be both subjectively genuine and objectively reasonable." *Id.* at 1011 (internal quotation marks omitted). The subjective component is generally satisfied by the applicant's credible testimony that he genuinely fears persecution. *Id.* The objective component requires the petitioner to establish "specific, detailed facts showing a good reason to fear that he . . . will be *singled out* for persecution," *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1290 (11th Cir. 2001) (internal quotation marks omitted), or a "pattern or practice of persecution of a group of which he is a member," *Lingeswaran*, 969 F.3d at 1291 (internal quotation marks omitted); *see* 8 C.F.R. § 1208.13(b)(2)(iii).

Aguilera Fernandez's credible testimony that he is afraid the Cuban police will persecute him upon return establishes that his fear is subjectively genuine; however, the record does not compel the conclusion that his fear is objectively

15

reasonable.  Aguilera Fernandez provides the following evidence that he will be persecuted if returned to Cuba: (1) his testimony, photographs, and a letter from a neighbor indicating that the Cuban police visited his home and asked about him after he left Cuba and (2) a 2018 Human Rights Report on Cuba (the "Report").  Although Aguilera Fernandez's testimony and documentary evidence indicate that the Cuban police continued to monitor him after his departure, this evidence does not compel a finding that that they plan to persecute him.  *See, e.g.*, *Djonda*, 514 F.3d at 1175 ("[W]e must draw all inferences from [petitioner's] evidence in favor of the decision of the Board.").  Further, Aguilera Fernandez did not "provide any evidence that the [Cuban police] told his [family] that they would imprison [him] for a significant period of time or otherwise harm him." *Lingeswaran*, 969 F.3d at 1290.

Similarly, the Report does not compel the conclusion that Aguilera Fernandez has a well-founded fear of persecution upon his return.  It is true that the Report states the Cuban government "common[ly]" uses "arbitrary arrests and short term detentions . . . [to] control[] independent public expression and political activity," and "monitor[s], infiltrat[es], and suppress[es] independent political activity." AR 320–22.  Likewise, the Report notes that Cuban police "commit[] abuses of civil rights and human rights with impunity." AR 322.  However, such evidence does not establish that Aguilera Fernandez will be singled out for

persecution. *See Ruiz*, 440 F.3d at 1259 (concluding that evidence in a country condition report did not compel reversal of the IJ's denial of asylum and withholding of removal because petitioners failed to demonstrate that they would be singled out for persecution); *Sepulveda*, 401 F.3d at 1231–32, 1232 n.7 (affirming an IJ's asylum denial despite evidence of generalized violence in a country condition report because the petitioner failed to establish she would be singled out for persecution). And nothing in the Report supports the conclusion that the mistreatment of political dissidents is "so extreme and pervasive as to establish a pattern or practice of persecution." *Lingeswaran*, 969 F.3d at 1291. Thus, the agency's conclusion that Aguilera Fernandez failed to establish a well-founded fear of future persecution must stand.

***

Because Aguilera Fernandez has not satisfied the "less stringent standard" for asylum, he cannot meet the burden for withholding of removal. *Zheng*, 451 F.3d at 1292.

## IV.   CONCLUSION

For the foregoing reasons, we deny Aguilera Fernandez's petition for review.

**PETITION DENIED.**